# HARRY E. WEST

*vs.*

# WILLIAM E. WOOD COMPANY.

*Attachment on Judgment—Condemnation—Form of Verdict—Appeal.*

On appeal from a refusal to strike out a judgment of condemnation of property attached, testimony as to the defendant's lack of interest in the property, taken at the trial of the attachment case and of a claimant's case, cannot be considered, the record containing no exception to any ruling as to the prayers or as to the admission of evidence in either case. p. 518

Where the only issues in the case of an attachment on judgment were whether the chattels attached were the property of defendant, and whether he had an interest in them, he having denied any property or interest, a judgment of condemnation of defendant's interest in the property, based on a finding by the jury "for the plaintiff," was not defective because it failed to value or define defendant's interest, the finding for plaintiff involving a determination that the chattels were his property and that he did have an interest in them. p. 519

Code, Art. 9, Sec. 13, which requires proof of the amount of assets in the hands of the garnishee, has no application where designated chattels are attached and sought to be condemned.
p. 520

A bond to dissolve an attachment on judgment of certain property, conditioned upon the satisfaction of "any judgment of condemnation" that may be entered, did not convert the proceeding into an action *in personam.* p. 520

In the case of an attachment on judgment, the verdict of the jury having determined that the articles attached were the property of defendant, the fact that the judgment in the attachment case in terms condemned "the interest of the defendant" in such articles, without defining the nature or extent of that interest, was not prejudicial to defendant, the effect of the

judgment being to condemn certain specified property as the property of the defendant, to be applied to the satisfaction of the claim of the judgment creditor.                                    p. 521

In the case of an attachment on judgment, the only question before the jury being the title to the property attached, a verdict for plaintiff was not void because it was not for a sum certain.                                                                  p. 522

Upon a motion to strike out a judgment of condemnation in an attachment case, filed eight months after the entry of such judgment, and over a year after the trial of a claimant's case, the propriety of the verdicts or the correctness of the rulings in either of those cases cannot be reviewed or considered.  p. 523

Parties to an attachment proceeding are charged with the duty of ascertaining such entries as are made in the ordinary progress of the cause, such as the entry, after verdict and the overruling of a motion for a new trial, of a judgment of condemnation, and the defendant or his attorney is not entitled to a special notice thereof.                                          p. 523

*Decided March 1st, 1922.*

Appeal from the Circuit Court for Harford County (HARLAN, J.).

Attachment on a judgment in favor of William E. Wood Company against John T. West. From an order refusing to strike out a judgment of condemnation, the defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*John L. G. Lee,* with whom was *William G. Towers* on the brief, for the appellant.

*Laurie H. Riggs, Stevenson A. Williams,* and *Fred R. Williams,* submitting on brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The William E. Wood Company, a corporation, in 1907 recovered a judgment in the Baltimore City Court against John T. West for $883.59, with interest from October 30th, 1907, and $9.70 costs. That judgment was revived by judgment of *fiat* on a writ of *scire facias* December 8th, 1919.

A writ of attachment issued out of the Baltimore City Court on the revived judgment, returnable to the Circuit Court for Harford County, which was returned to that court on December 22nd, 1919, by the sheriff of Harford County. Under that writ, as shown by his return, the sheriff attached "a large number of bricks, supposed to be one million," in the possession of the Susquehanna Power Company, and summoned that company as garnishee. There is nothing in the record to show that the garnishee filed any plea in the case, but on April 1st, 1920, the defendant John T. West filed two pleas, reading as follows:

"1. That there is no such record.

"2. That the bricks attached in this case are not the property of John T. West, and he has no interest therein."

There is some confusion in the record as to what was done with these pleas, but the docket entries indicate that the plea of *nul tiel* record was withdrawn, and the second plea traversed and issue joined on the traverse. A trial of that issue before a jury in the Circuit Court for Harford County resulted in a verdict "for the plaintiff" on April 16th, 1920, and on the same day a motion for a new trial was filed, which the court, on May 8th, 1920, heard and overruled, and on May 31st, 1920, judgment on the verdict was entered in this form: "Judgment of condemnation of the interest of the defendant in the property attached in favor of the plaintiff for the amount of the judgment, interest and costs mentioned in the writ of attachment with the costs of said attachment." On February 11th, 1921, the defendant moved to strike out that judgment for the following reasons:

"First: That said judgment was entered without his knowledge, and that he has just this day learned that said judgment has been entered up in said case.

"Second: That this litigation grew out of a lot of bricks at the Susquehanna Power Company, in the Fifth Election District of Harford County, which was attached by the plaintiff on a judgment recovered by him in Baltimore City.

"Third: That at the trial of the case below, one John J. Hurst alleged that the bricks belonged to Harry West and the said John J. Hurst, as partners, and that John T. West, the defendant in this case, had no interest in said bricks. The plaintiff answered and stated that the said John T. West had an interest in said bricks, and that the issue went to the jury, and the jury found for the plaintiff, to wit, that the said John T. West did have an interest in said bricks, but it did not decide what his interest was.

"Fourth: The judgment recovered in the above entitled case is in error, because it condemns the interest of the defendant, John T. West, in said bricks, when the amount of said interest has never been determined, and it could not by any means be the sum of $981.00, as claimed by the plaintiff, because the total value of said bricks would not be that much, and it was conceded at the trial that the said Harry West had an interest in said bricks, and also that the said John J. Hurst had an interest in said bricks."

On May 13th, 1921, the court passed an order overruling the motion to strike out the judgment and from that order this appeal was taken. The sole question presented by the record for our consideration therefore is, whether the judgment in the attachment case is so defective that it should be stricken out for the reasons stated in the appellant's motion.

In addition to the facts to which we have referred, it also appears that, on January 13th, 1920, Harry E. West and John J. Hurst filed in the attachment case a claim of title

to the property attached. The claimants' case, thus instituted, was tried before the court on January 20th, 1920, and on the same day a verdict for the defendant was returned and judgment in due course entered thereon.

The only testimony taken in connection with the motion to strike out the judgment was that of Mr. John L. G. Lee, who said that neither he nor his client Mr. Hurst had any notice of the entry of the judgment of May 31st, 1920, in the Circuit Court for Harford County, and knew nothing of it until Mr. Hurst was served with the declaration in a suit in Baltimore City, and the testimony of Mr. Stevenson A. Williams, who testified that on several occasions, after the judgment had been entered, he asked Mr. Lee when the West claim would be settled. Mr. Lee in rebuttal said that, while Mr. Williams may have said that, he (Lee) always stated that the value of the West interest in the bricks had not been fixed. There is also incorporated in the record the testimony of John J. Hurst, which appears to have been taken at the trial of the attachment case, and the testimony of Harry E. West, John T. West, George W. Bagley, John S. Munders and William G. Towers, apparently taken in the claimant's case, which tended to show that John T. West had no interest in the bricks, but that they were owned by John J. Hurst and Harry E. West. Since this is not an appeal from the judgment in the claimant's case or from the judgment in the attachment case, and as the record contains no exception to any ruling of the court as to the prayers or the admission of evidence in either case, that testimony is wholly foreign and irrelevant to any question before us, and we are not aware of any principle of law which could authorize us to consider it, and it is not therefore necessary to refer to it in greater detail.

The appellant's motion to strike out the judgment rests upon two propositions: first, that "the judgment of condemnation is an irregularity on the face of the proceedings," and second, that "if it is admitted that there is a partnership, the

properties or credits of the partnership cannot be taken by attachment."

The "irregularity" of the judgment upon which the appellant relies is that it does not value or define the defendant's interest in the bricks, but there is nothing contained in the record to indicate that the value of the bricks, or of the defendant's interest in them, was an issue in the case. The appellant in his second plea said that the "bricks attached are not the property of John T. West and he has no interest therein." That was his defense, and that plea the plaintiff traversed. The issues then were, whether the bricks were the property of John T. West, and whether he had an interest in them, and not what they were worth or what his interest in them was worth, and, as the jury could only respond to the issues upon which they were sworn, they were neither required nor authorized to make any such valuation. The writ commanded the sheriff to attach any chattels, etc., of John T. West in his bailiwick to the amount of "the damages, costs and charges." Under that writ he attached the bricks in question. John T. West pleaded that he had no property or interest in them, and the plaintiff answered that the bricks were his property and he did have an interest in them. The jury found generally for "the plaintiff," thereby determining the issue in his favor, and deciding that the bricks were the property of John T. West. The verdict could have had no other effect. By the pleadings they were required to determine two questions, whether the bricks were the property of John T. West, and whether he had an interest in them. By finding generally "for the plaintiff," they necessarily determined that they were his property and that he did have an interest in them. If they had found that they were not his property, but that he had an interest in them, it would then have been proper for them to have stated what the interest was, but having determined that he owned them, it followed as a matter of course that his interest was that of absolute ownership. It was upon that verdict that the judg-

ment was entered. The verdict having determined that the
bricks were the property of the defendant, the judgment was
for the "condemnation of the interest of the defendant" in
the attached property to the amount of the judgment, inter-
est, and costs. It did not value the property because the
judgment was in *rem,* and if the *res* was the property of the
defendant it was immaterial to determine its value in that
proceeding because, if when the property, or so much thereof
as is necessary, was sold in execution of the judgment, it
brought more than the judgment, costs, etc., the surplus
would go to the defendant, and if it brought less it would be
applied in reduction of the judgment claim. Section 13 of
article 9, *Code Pub. Gen. Laws,* which requires proof of the
amount of assets in the hands of a garnishee, has no applica-
tion where designated chattels are attached and sought to be
condemned. *Western Bank* v. *Union Bank,* 91 Md. 624.

Assuming, without deciding, that it is valid, we do not
agree that the filing of the bond in this case to dissolve the
attachment converted the proceeding into an action *in per-
sonam.* The bond, if it had any effect, only took the place
of the *res,* and it is conditioned upon the satisfaction of "any
judgment of condemnation" that may be entered against the
defendant, and it manifestly contemplated a condemnation
of the chattels, since there was nothing else to condemn. But
we are not to be understood as deciding that the bond was
valid, or that it was authorized by the statute. This is not
an attachment on original process, to which the following lan-
guage of section 19, article 9, *Code Pub. Gen. Laws,* is
peculiarly appropriate: "No attachment shall be dissolved
unless every defendant appears to the action, and unless a
bond be given by or on behalf of the defendant or defendants,
in a sum of money equal to the value of the property at-
tached, with security to be approved by the court, or the
judge thereof, if in recess, to satisfy any judgment that shall
be recovered in such case against the defendant." Nor, if it
could be held that that section authorizes the dissolution of

an attachment issued on a judgment by the filing of a bond by the defendant, can it be said that this bond is in literal compliance with its terms.  But as that question is not directly before us, we will express no final opinion as to the validity of the bond, further than to say that, by reason of the language of its condition, the bond in this case does not convert it into an action *in personam.*  The judgment, it is true, condemns only "the interest of the defendant" in the property without defining the nature or extent of that interest, but since the verdict for the plaintiff determined that the bricks were the property of the defendant, and while the judgment should have plainly stated that it was for the condemnation of the specific property attached as the property of the defendant, it can hardly be said that the defendant was injured by the form of the judgment.  The verdict having determined that the bricks were the property of the defendant, his "interest" in them was that of absolute ownership, and the judgment should have so stated in very much clearer language than that employed.  Since, however, the expression "interest of the defendant" is not inconsistent with the complete ownership by the defendant of the chattels, it does not affect the validity of the judgment, and the effect of it is to condemn certain specified property as the property of the defendant, to be applied to the satisfaction of the claim of the judgment creditor.  *Griffith* v. *Milwaukee Harv. Co.,* 92 Iowa, 634; 54 A. L. R. 573; *Hodges & McLane, Attachment,* secs. 101, 184; *Brent* v. *Taylor,* 6 Md. 58; *Morton* v. *Grafflin,* 68 Md. 559; *Shinn, Attachment,* sec. 453.

It is further contended that the judgment, while not defining or valuing the interest of the defendant in the bricks, does without any warrant value the bricks.  That rests upon a misapprehension of the phraseology of the judgment.  It did not value the bricks, nor did it declare that they were equal in value to the amount of the judgment, but condemned them to be applied in settlement of that judgment.

Nor is there any force in the contention that the verdict was void because it was not for a sum certain. This was an attachment on a judgment, by which the amount of the defendant's indebtedness was established, and the only question before the jury in the attachment case was the title to the property attached.

In our opinion there is no such irregularity in the form of the judgment as would justify us in declaring it void.

This brings us to the second proposition, which is, that "if it is admitted there is a partnership," the partnership property cannot be attached. This is a mere academic abstraction, without apparent relevance to any questions before us. It is stated in the appellant's brief that "it will be conceded at this hearing that these bricks were owned and controlled by the two Wests and Mr. Hurst, as president of the Cityco Realty Company, jointly; in other words, that they were owned by a partnership of Harry E. West, John J. Hurst (or the Cityco Realty Company) and John T. West. That was all that was contended for in these proceedings and that was all that was decided by the litigation." There was no such concession, however, and the record contains nothing which would warrant us in deciding as a matter of law that the bricks were owned by a partnership composed of John J. Hurst (or the Cityco Realty Company), Harry E. West, and John T. West, even if we could consider the testimony in the attachment case, for at the trial of that case Mr. Hurst flatly denied the existence of any such partnership. Whether there was such a partnership and whether it owned the property attached were proper questions for the jury in the attachment case. That jury by their verdict determined that there was no partnership in the property attached, but that it belonged to the defendant. Whether they erred in that or whether the court erred in its instructions to them, are questions not before us on this appeal. If the verdict of the jury was inconsistent with the evidence, it could have been set aside by the court upon the defendant's motion; or if the

trial court erred in its rulings, the defendant could have had those rulings reviewed in accordance with the ordinary practice, by reserving exceptions to them and bringing those exceptions to this Court on appeal from the judgment. But we cannot, upon a motion to strike out a judgment in the attachment case, filed eight months after the entry of such judgment, and over a year after the trial of the claimant's case, review or consider either the propriety of the verdicts or the correctness of the rulings of the court in either of those cases, for those matters are finally adjudicated and at rest. Nor could this conclusion be affected by the fact that no notice of the entry of the judgment in the attachment case was given to the appellant or his attorney. The case was pending and they were charged with the duty of ascertaining such entries as were made in the ordinary progress of the cause. The entry of the judgment after verdict and after a motion for a new trial had been overruled was such an entry. We know of no practice which entitles parties to such a proceeding as this to be served with a special notice of such entries, and in our opinion none is required.

For the reasons stated the order appealed from will be affirmed.

*Order affirmed, with costs to the appellee.*