LAWLER et al. v. BART REALTY
CORPORATION

[No. 297, September Term, 1965.]

*Decided February 14, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*J. Allan Cohen* and *James J. Doherty,* with whom were *Friedman & Goodman* on the brief, for the appellants.

*Everett L. Buckmaster,* with whom were *A. Owen Hennegan, Jr., George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for the appellee.

McWILLIAMS, J., delivered the opinion of the Court.

The appellee (Bart) is the owner of 15.9 acres (formerly owned by Hutzler Bros.) in the Catonsville area which for many years has been zoned BM (Business, Major) and which is being developed as a shopping center. In April 1965 Bart was under contract to Korvette Stores to complete the erection of a large building on the property before the 1965 Christmas holidays. All of the requirements of Baltimore County having been met, Bart applied, on 26 April 1965, for a building permit. Following customary routine the plans were circulated among the county officials charged with determining whether the plans were in compliance with all of the rules and regulations. The plans were approved by everyone except the Planning Director (Mr. Gavrelis) and the Zoning Commissioner (Mr. Rose). Mr. Gavrelis was prepared to approve the plans and he said he would do so as soon as Mr. Rose gave his approval. This was about the status of Bart's application when counsel for appellants telephoned Mr. Rose and asked for a hearing as provided in Section 500.7, Article 5 of the Zoning Regulations. Mr. Rose, shortly thereafter, told Bart's counsel that he intended to hold such a hearing.

Immediately aware of the mischief which could be created by the dilatory potential of such a proceeding, counsel for Bart, on 7 May, filed a petition for a writ of mandamus to compel the issuance of the permit. On the same day, counsel for appellants filed with Mr. Rose a formal petition for a hearing under Section 500.7, *supra*. Mr. Rose signed forthwith the order attached thereto setting the hearing for 4 June.

On 20 May, counsel for appellants asked for, and obtained (over Bart's objection) permission to intervene in the mandamus proceeding.

In this posture the case came on for trial on 25 May. Appellants were not present but their attorneys participated in the trial at the conclusion of which Judge Proctor ordered the county authorities to issue the permit and at the same time he enjoined Mr. Rose from holding the hearing set for 4 June. The permit was issued, the hearing was called off and construction was commenced. We were advised at argument that the building is nearing completion.

Since none of the other defendants, including Mr. Rose, have

taken an appeal, we must first consider, in light of Bart's motion to dismiss, whether the appellants have sufficient standing or interest to maintain this appeal.

Let us begin with the petition for a special hearing filed with Mr. Rose which is reproduced in the appendix to the appellants' brief but which does not appear in the record. The petition begins "we undersigned citizens [the word "taxpayers" is not used] of Baltimore County" but, despite the insertion of names and addresses, it is uncertain whether they actually signed it. The Commissioner is requested "to consider Section 23-18 Zoning—Powers of the County as set forth in the Baltimore County Code 1963 Supplement" the last sentence of which is quoted. The petition concludes with an agreement to pay the expenses of the hearing and a further agreement to be bound by the regulations and restrictions adopted pursuant to the "Zoning Law for Baltimore County." There are no allegations of illegality, irregularity, hardship, inconvenience or special damage.

The petition to intervene in the mandamus proceeding is a little more elaborate. Appellants are described as "citizens and taxpayers" and as "homeowners and property owners within the area immediately adjacent" to Bart's property. It is alleged that the petition is filed on behalf of the appellants and "all similarly situated persons." Reference is made to the order of Mr. Rose setting the date for the hearing and Section 500.7 of the Zoning Regulations is set out in full. Section 23-18 of the Baltimore County Code, *supra,* is set out—this time in full. Bart's plans are alleged to be "detrimental to the health, safety, comfort and welfare of * * * [appellants] as well as the public generally" but there is not even a suggestion as to why or how this is so. The petition is not signed by appellants nor is it verified as required by Maryland Rule 321 b. Appellants argue they are not bound by the rule. However, since it is unnecessary for us to do so, we express no opinion in respect of the applicability of the rule in the present circumstances.

Judge Proctor, although expressing some uncertainty as to their standing to intervene, and despite the opposition and objection of Bart, allowed the intervention just before the opening of the trial. The appellants were not present at the trial,

no witnesses were summoned by them, nor was there offered in their behalf any evidence of any kind. Bart offered the testimony of Eugene J. Clifford, the County Traffic Engineer, John C. Childs, a consulting engineer, Paul Lee, an architect associated with Childs, George E. Gavrelis, the Planning Director of the County, and John G. Rose, the Zoning Commissioner. Counsel for appellants participated in the trial and cross-examined the witnesses aggressively. Although we have examined the testimony carefully we have not succeeded in discovering the purpose of their cross-examination. The result, however, is plain enough. They drew from the witnesses a great deal of immaterial information about internal administrative procedures. How or why all this was relevant to the interests of their clients is a puzzlement.

In appellants' brief are a few vague references to the "protection" of their interests. What these interests are seems, at least to us, to be a well organized mystery. It is said that youngsters once played baseball on this property and we are quite willing to believe it. It is said that children walk to school along Old Frederick Road (the rear boundary of the property) and we have no doubt this is so. It is said that appellants resent the increase of commercial activities in the area and we can certainly understand that, even though Bart and its predecessors in title have had an absolute right, for many years, to use the property for commercial purposes. Mr. Rose expressed some concern about the entrance to the property from Old Frederick Road although one needs but half an eye to see that he was grasping at straws. Old Frederick Road is a public road, denial of access to it has never been acquired by government and, since the property binds on the road, Bart has a legal right of access. Moreover, the site of the entrance was chosen by the Traffic Engineer, Mr. Clifford, and the design of it was approved by him. Judge Proctor said Mr. Rose was bound by Mr. Clifford's conclusions.

At argument counsel hinted that the hearing sought by appellants would produce sinister disclosures which somehow would be of great benefit to them. When pressed as to what might be disclosed and how it might inure to appellants' benefit counsel ingenuously admitted he would not be able to say until after the hearing.

We think the appellants' standing to sustain this appeal is controlled by *Kreatchman v. Ramsburg,* 224 Md. 209, 167 A. 2d 345 (1961). In that case Ramsburg, after an unsuccessful attempt to have his property rezoned for use as a shopping center, filed a bill in equity to restrain the County Commissioners of Howard County from interfering with his use of the same property as a shopping center, claiming that the Zoning Regulations as applied to his property were unconstitutional and void. Kreatchman, who, together with the owner of another proposed shopping center had opposed Ramsburg in the hearing before the Commissioners, was permitted (without objection) to intervene as a defendant in the equity proceeding. The other opponent made no attempt to intervene. Kreatchman's only objection to Ramsburg's shopping center was that it would provide unwanted competition. As expressed by Chief Judge Brune, who wrote the Court's opinion in *Kreatchman, supra*:

> "Mr. Kreatchman's only expressed opposition to the Ramsburg application was fear of competition from the ·new proposed shopping center, *and his right to maintain this appeal must stand or fall on the sufficiency of that interest." Id* at 218 (Emphasis supplied.)

The trial court restrained the Commissioners from "in any way interfering with the use by * * * [Ramsburg] * * * [of his property] as a" shopping center. Only Kreatchman appealed.

It will be noted that Ramsburg (unlike Bart) did not move to dismiss Kreatchman's appeal. The Court did so, sua sponte, as provided in Maryland Rules 835 a and 835 b. Chief Judge Brune reviewed the prior decisions and after observing that "* * * the fact that intervention * * * [had] been allowed in the trial court is not controlling as to the right of appeal" *(id* at 216), he went on to announce the Court's holding:

> "To recapitulate, it appears that Mr. Kreatchman owns a home and resides at Normandy Heights, a development adjacent to the site of the proposed shopping center owned by Normandy Development Company, the other party which opposed the appellees' petition before the Board. There is nothing in the rec-

ord to show any injury to, or depreciation in the value of, Mr. Kreatchman's residence. His only concern is with the threat of competition from a possible package liquor store in the Ramsburgs' shopping center. It is to protect himself against that possible competition that he seeks the protection of the zoning regulations. In view of the authorities above cited, especially the *Circle Lounge* case, [*Circle Lounge & Grille v. Board of Appeals of Boston,* 324 Mass. 427, 86 N. E. 2d 920 (1949)] we think that he is not entitled to do so. Apart from the zoning laws, he would have no ground upon which to enjoin the Ramsburgs' use of their land for shopping center purposes; and the zoning laws give him no standing to do so, where the sole basis for invoking them is the prevention of competition." *Id* at 222.

However hopeless the plight of Mr. Kreatchman appears to have been, the melancholy fact is that the appellants are even worse off. Kreatchman, at least, was able to posit the possibility of undesirable, and perhaps harmful, competition. The only shot in the appellants' locker seems to be that, given the hearing they seek, *perhaps* something can be found with which to belabor Bart or other unfriendly but presently unidentified citizens.

Both briefs cite a number of authorities but, Judge Brune having so recently reviewed most of them, we think it unnecessary to discuss them.

Since the appeal will be dismissed we need not consider the propriety of Judge Proctor's admission of the appellants as intervenors nor the correctness of his final order.

*Appeal dismissed, appellants to pay the costs.*